■ TOFICK REZEY, Respondent, v GOLUB CORPORATION et al., Appellants. —Appeal from a judgment of the Supreme Court, entered November 22, 1978 in Albany County, upon a verdict rendered at a Trial Term, in favor of plaintiff. Plaintiff is a former employee of defendant Golub Corporation, having been employed as produce manager in the East Greenbush store of Central Markets from July, 1961 until he was terminated on January 31, 1972. The Golub Corporation is engaged in the retail food business, currently doing business under the name of Price Chopper and formerly under the name of Central Markets. Defendant Roy Anderson was the director of security for the Golub Corporation in 1971 and the early part of 1972. In November, 1971, William McCormack, the manager of the meat department at the Rensselaer store operated by defendant Golub Corporation, became the victim of a scheme of harassment through mail and telephone communications received at his home and place of employment consisting of, among others, fictitious love letters, a nude photograph from his purported lover, his own funeral notice with pictures of a coffin, an envelope containing union cards, and a warning to watch his car stating that "it might not be safe driving home." Three days after receiving the warning about his car the wheels fell off as he started to drive home. The harassment tactics began endangering his family life, since some of the telephone communications had been received by his wife, and his children became aware of the character of the communications. McCormack reported the situation to Andy Tufano, the assistant director of security of the Golub Corporation, who, after informing Roy Anderson of the situation, was assigned to investigate and ascertain who was the perpetrator. At the request of Tufano, McCormack gave him a list of the names of 10 or 15 people with whom he had worked over a period of time and whom he considered as possibly involved. In the course of his investigation, Tufano checked various funeral homes and eventually located the funeral home from which the death notice had been obtained and ascertained from the director of the funeral home that Robert Asadorian, a Golub employee in the East Greenbush store, had obtained the notice and coffin brochure. Asadorian, upon being questioned by Tufano and Anderson, admitted his involvement. His statements were taped and the tape, together with the materials mailed to McCormack, were presented to the Rensselaer County District Attorney. On December 18, 1971, Asadorian was arrested at the East Greenbush store on a charge of aggravated harassment. He was then suspended from his employment. Around this time, Asadorian suffered a heart attack and McCormack decided he wanted the charges dropped since he "didn't want to be responsible for that and I didn't think it was doing good for him and his family." Thereafter, Asadorian telephoned Tufano, stating that he would like to get a couple of things free of his conscience and wanted to talk to him about it. On December 29, 1971, Asadorian met with Tufano and gave him a full

statement detailing the involvement of himself and others, including the plaintiff, in the harassment of McCormack. The criminal charges against Asadorian were eventually dropped in January, 1972. Edie Perez, another employee of the East Greenbush store, also implicated plaintiff, although she refused to reduce to writing the names and extent of involvement of those she implicated, because she did not want to get anyone else in trouble. Plaintiff was also questioned by Tufano and Anderson and he denied any involvement. He admitted he had mailed a letter for Asadorian, but denied knowledge of its contents and to whom it was addressed. He testified that he was questioned about union involvement and was told that if he signed a statement that this was union motivated, his suspension would be lifted and he could go back to work. On January 31, 1972, he was terminated. This action for slander was thereafter commenced. The second amended complaint alleged that on December 30, 1971 at defendant Golub's place of business, defendant Roy Anderson, while in the employ of defendant Golub and in furtherance of its business, did, in the presence of others, utter false and defamatory statements concerning plaintiff, accusing him of complicity in a crime. It was also alleged that the acts and words were done and used by defendants maliciously and with the intent to harm plaintiff. At the trial, defendants sought to establish the defense of qualified privilege. The court charged that any statements made by Moran, Anderson or Tufano to each other or by them to plaintiff and McCormack came within the privilege as a matter of law, and that the only aspect of this defense which the jury must consider is the element of good faith and believing the statements to be true. The court also charged that the burden of proving that the statements were made maliciously was upon plaintiff. The jury of six unanimously found a verdict in favor of plaintiff in the amount of $90,000. Defendants contend that the verdict is contrary to the weight of the evidence in that there is no evidence to support a finding of actual malice, which was required to overcome the defense of qualified privilege. When statements are presumptively priviledged, it is incumbent upon plaintiff to prove that the statements were false and that defendant was actuated by express malice or actual ill will *(Stukuls v State of New York,* 42 NY2d 272). Falsity of the statements alone is not sufficient to show malice, unless there is some evidence to show that defendant knew the statements to be false. " 'By actual malice is meant "personal spite or ill will, or culpable recklessness or negligence" ' *(Hoeppner v. Dunkirk Print. Co.,* 254 N. Y. 95, 106)" *(Shapiro v Health Ins. Plan of Greater N. Y.,* 7 NY2d 56, 61). Defendants, as the court charged, had a duty and a right to investigate the harassment of Mc-Cormack and to communicate the results of the investigation to plaintiff and McCormack, and to other interested persons in the employ of the Golub Corporation. The burden was upon plaintiff to produce evidence of facts establishing malice. He produced only his testimony that his only part in the harassment was the mailing of a letter for Asadorian, professing that he did not know to whom it was addressed. The communication by plaintiff to defendants denying his involvement is not alone sufficient to establish the falsity of the statements made by defendants that he was involved in the harassment or that they knew their statements to be false in view of the statements concerning plaintiff's involvement made by Asadorian and Perez. Plaintiff's attempt to establish malice on the part of the investigators by reason of their questions concerning union involvement in the harassment was also insufficient. Although certain workers, including plaintiff, were seeking to unionize the East Greenbush store, and an election was scheduled, the questioning of plaintiff concerning possible union involvement in

the harassment does not establish hostility or malice by the investigators as to plaintiff, in view of the fact that McCormack had received union cards in the mail, although he could not use them since he was part of management. Under these circumstances, the possibility of union motivation or involvement was a proper subject of investigation. The fact that plaintiff was interested in the union and that he was questioned concerning possible union involvement does not establish hostility towards him or malice. On this record, plaintiff failed to prove that "malice was the one and only cause" for the publications *(Stukuls v State of New York, supra)*. The judgment appealed from must, therefore, be reversed and the complaint dismissed. Judgment reversed, on the law and the facts, and complaint dismissed, without costs. Mahoney, P. J., Greenblott, Sweeney, Staley, Jr., and Mikoll, JJ., Concur.