Delores SABATOWSKI, Plaintiff,

v.

FISHER PRICE TOYS, Defendant.

No. CIV–89–269S.

United States District Court,
W.D. New York.

April 29, 1991.

Discharged employee brought action against employer for breach of employment contract, defamation, and intentional infliction of emotional distress. Employer filed motion for summary judgment and motion for sanctions against employee's counsel. The District Court, Skretny, J., held that: (1) employment application, employee handbook, oral representations by employer's official, and employee's receipt of benefits did not limit employer's right to discharge employee at will; (2) New York's defamation pleading requirements were inapplicable in diversity suit; (3) employee's complaint adequately stated cause of action for defamation; (4) qualified privilege protected alleged defamatory statement made by employer's assembly line foreperson to her line workers that employee had "stolen" toys from assembly line; and (5) employee did not adequately allege extreme or outrageous conduct and emotional injuries so as to state claim for intentional infliction of emotional distress.

James Michalek, Michalek & Montroy, Buffalo, N.Y., for plaintiff.

Neil A. Goldberg, Saperston & Day, P.C., Buffalo, N.Y., for defendant.

## DECISION AND ORDER

SKRETNY, District Judge.

### INTRODUCTION

Now before this Court is defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56.

Dolores Sabatowski ("plaintiff") sues defendant Fisher–Price Toys ("defendant") for damages stemming from defendant's alleged breach of an employment contract, defamation and intentional infliction of emotional distress.

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 and, therefore, New York law supplies the substantive rule of decision in this case.

This lawsuit stems from a rather unfortunate workplace incident which occurred October 24, 1988. Plaintiff, an assembly line employee of defendant for more than fifteen (15) years, during a work break removed two toy Smooshies, worth about one dollar each, from the assembly line and placed them in a paper bag. Plaintiff insists that she never intended to steal the Smooshies but only intended to place them on another assembly line as a joke. Shortly after placing the Smooshies in the bag, however, three of defendant's supervisory personnel confronted plaintiff about the Smooshies. Plaintiff did not deny taking the Smooshies and, according to her own deposition testimony, offered the supervisory personnel no explanation for placing them in the bag. As a result of the incident, two days later, defendant discharged plaintiff.

With respect to her breach of contract claim, Count One of the Complaint, plaintiff alleges that the totality of her employment application, defendant's "Hourly Handbook" for its East Aurora, New York plant, defendant's oral representations of job security and what plaintiff generally refers to as "... the terms and benefits ..." of her employment, constitute a contract between defendant and plaintiff.

Plaintiff alleges that defendant breached this contract by discharging her. With respect to her defamation claim, Count Two of the Complaint, plaintiff alleges that one of defendant's assembly line forepersons stated to assembly line employees, essentially plaintiff's co-workers, that plaintiff "stole things" from defendant. Lastly, with respect to her intentional infliction of emotional distress claim, Count Three of the Complaint, plaintiff alleges that defendant "... forced and coerced [her] into admitting a crime which she did not commit" and told her that "... she was to be made a scape goat for missing merchandise...." Plaintiff alleges that these actions caused her emotional distress.

Defendant moves for summary judgment on all three claims, arguing that no employment contract existed between defendant and plaintiff limiting defendant's right to discharge plaintiff at will, and that plaintiff has failed to raise any material factual issues with respect to defamation or intentional infliction of emotional distress. Defendant also moves for sanctions against plaintiff's counsel pursuant to Fed.R.Civ.P. 11.

In support of its motion, defendant submits its Notice of Motion with exhibits, a Statement Of Undisputed Facts ("d. fact"), a legal memorandum ("d. memo.") and Neil Goldberg, Esq.'s Affidavit In Response To Plaintiff's Memorandum of Law ("Response Affidavit"). Defendant's counsel also submits an affidavit opposing plaintiff's Response To Defendant's Statement of Undisputed Facts and an affidavit in reply to plaintiff's affidavits.

In opposition to defendant's motion, plaintiff submits its Notice of Cross–Motion [1] with exhibits, including the affidavit of plaintiff ("Sabatowski"), the affidavit of plaintiff's husband John Sabatowski ("John Sabatowski") and affidavits of plaintiff's counsel. Plaintiff also submits a legal

memorandum ("p. memo.") and a Response To Statement Of Undisputed Facts ("p. fact").

Additionally, both parties have submitted portions of plaintiff's deposition testimony ("dep.").

This Court has considered all these submissions and oral argument held on January 7, 1991.

*Conclusion:* For the reasons set forth below, this Court grants defendant's motion for summary judgment in its entirety and dismisses plaintiff's lawsuit. This Court further summarily denies defendant's motion pursuant to Fed.R.Civ.P. 11.

## FACTS

The following material facts are not in dispute.

On August 1, 1973, plaintiff commenced employment with defendant as an assembly line worker paid on an hourly basis. At the time plaintiff commenced her employment with defendant, plaintiff did not enter into a written contract with defendant concerning her employment. (dep., p. 7; d. memo., p. 2).

Immediately prior to commencing employment with defendant, plaintiff was not employed outside the home. According to her deposition testimony, plaintiff applied for employment with defendant to "... be among people" and for "... the extra money." (dep., p. 7).

Plaintiff's employment application with defendant, which plaintiff submits to this Court, is dated August 23, 1972. Plaintiff's employment application establishes that plaintiff's last employer before defendant was Harvest Markets, Inc. of Buffalo and plaintiff's employment with Harvest Markets terminated on July 1, 1972, before plaintiff sought employment with defendant.[2]

---

**1.** Although plaintiff refers to her submission as a cross-motion, plaintiff actually only opposes defendant's summary judgment motion and does not seek judgment at this stage in the litigation.

**2.** Plaintiff's legal memorandum states that plaintiff filed her application for employment

with defendant while "... she was in employment with JC PENNY COMPANY in the Security Department." (p. memo., p. 1). This statement, however, flat out contradicts documentary evidence from the time of the events at issue, which the *plaintiff* has submitted to this Court and which this Court relies on.

On October 24, 1988, during a work break plaintiff took two Smooshies off defendant's assembly line and placed them in a paper bag. (p. memo., p. 1; d. fact, ¶ 6). Plaintiff did not work on the Smooshie assembly line. (dep., p. 19). According to plaintiff, she "... had taken 'Smooshies'" from one assembly line "... to playfully place them on" another assembly line where she worked, the "Corn Popper" line. (Sabatowski, ¶ 19; dep., pp. 19–21).

Plaintiff concedes that to take company products off their assembly line was against defendant's company policy and not part of her job. (dep., pp. 17–18). Plaintiff also concedes that no supervisor instructed her to remove Smooshies from the assembly line and to place them on the Corn Popper line. (dep., p. 21).

Later on October 24, 1988, immediately after her work break, while still holding the paper bag containing two Smooshies, plaintiff was told to go to the office of Sarah Craig ("Craig"), defendant's employee relations administrator. (dep., pp 31–34). At this meeting (the "October 24, 1988 meeting") were Craig, Raymond Buncy, defendant's plant manager, and Mort Benstead, defendant's security supervisor. (dep., pp. 36–37; d. memo, p. 3). Craig and Buncy questioned plaintiff with respect to whether she had taken Smooshies. At the October 24, 1988 meeting plaintiff admitted that she had taken the Smooshies and placed them in the paper bag but offered no explanation as to why she had done so. (dep., p. 39).

On October 26, 1988, defendant discharged plaintiff as a result of the Smooshie incident.

## SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate where "... there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The burden is upon the moving party to demonstrate the absence of a material factual dispute. Fed.R.Civ.P. 56(e). Once that burden is met, the non-moving party "... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). This Court must draw all reasonable inferences in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). Moreover, courts should not be reluctant to grant summary judgment in appropriate cases since "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims," *Celotex Corp. v. Cateret*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), thereby permitting courts to avoid "... protracted, expensive and harassing trials." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

Applying this standard to the present motion, this Court finds that there exists no genuine issue of material fact for trial on any of plaintiff's claims.

## DISCUSSION

*Breach Of Employment Contract (Count One)*

In Count One of the Complaint, plaintiff alleges that defendant "wrongfully discharged" plaintiff so as to constitute breach of an employment contract between plaintiff and defendant.

Defendant moves for summary judgment arguing that plaintiff was an employee at will and under New York common law subject to discharge for any reason. Furthermore, defendant contends, no employment contract existed between plaintiff and defendant which limited defendant's right to discharge plaintiff at will.

1. The New York Employment At Will Rule

New York law unequivocally dictates that, absent an express agreement establishing that employment is to be for a fixed duration, an employment relationship is presumed to be a hiring at will, "... which may be freely terminated by either party at any time for any reason or even for no reason." *Murphy v. American Home*

*Products Corp.*, 58 N.Y.2d 293, 300–01, 461 N.Y.S.2d 232, 235, 448 N.E.2d 86, 89 (1983) (citations omitted). New York courts have narrowly construed limits on an employer's right to discharge an at will employee for any reason; "... absent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired." *Id.*, 58 N.Y.2d at 305, 461 N.Y.S.2d at 237, 448 N.E.2d at 91.

The most litigated limitation on an employer's right to discharge an at will employee, which gained prominence in *Weiner v. McGraw–Hill*, 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982), and which is at issue in this case, continues to be an express contractual limitation proscribing the employer's unfettered right to discharge for any reason.

In *Weiner*, reversing the dismissal below, the Court held that an employee stated a cause of action for wrongful discharge predicated on an alleged breach of an express employment contract. The Court concluded that language in an employment handbook combined with reference to the handbook in an employment application constituted sufficient evidence of an express contract limiting the employer's otherwise "unfettered right" to discharge the employee. The Court identified four factors, alleged by the employee and supported by the evidentiary record, from which a jury could infer the existence of an express contractual limit on the employer's right to discharge. First, the employee alleged that the employer induced the employee to leave his former employer by assurances of job security. Second, the employee alleged that these assurances were incorporated into an employment contract, application or other document. Third, the employee alleged that he rejected other offers of employment in reliance on these assurances. And fourth, the employee alleged that the employer informed him that he could be discharged only for cause. *Id.*, 57 N.Y.2d at 465–66, 457 N.Y.S.2d at 197, 443 N.E.2d at 445.

■ This Court emphasizes, however, that these are not the only factors indicating the existence of an express limitation on an employer's right to discharge an otherwise at will employee. Federal courts in this Circuit have weighed the totality of the circumstances to determine the existence of an express contractual right limiting the employer's right to discharge. *See, Gmora v. State Farm Mutual Automobile Insurance Company*, 709 F.Supp. 337, 340 (E.D.N.Y.1989) *aff'd*, 888 F.2d 1376 (2d Cir. 1989); *Gorrill v. Icelandair/Flugleidir*, 761 F.2d 847, 853 (2d Cir.1985).

However, since *Weiner*, to avoid entry of judgment for the employer, the New York Court of Appeals has demanded that an employee sustain an "... explicit and difficult pleading burden," *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 334–335, 514 N.Y.S.2d 209, 212, 506 N.E.2d 919, 922 (1987), by showing the existence of an express contractual limitation on an employer's right to discharge an employee at will. *Murphy*, 58 N.Y.2d 293, 305, 461 N.Y.S.2d 232, 237, 448 N.E.2d 86, 91 (1983).

In *Murphy*, holding that a discharged employee failed to show that his employment manual established an express limitation on the employer's right to discharge at will, the Court rejected the employee's attempt to fit his wrongful discharge action within the beneficial umbrella of *Weiner*. Although the employee cited "general references" to the manual which allegedly created the limitation on the employer's right to discharge at will, the Court found no provision in the manual "... pertinent to the employer's right to terminate his employment...." *Id.*, 58 N.Y.2d at 305, 461 N.Y.S.2d at 237–38, 448 N.E.2d at 91–92.

Similarly, in *Sabetay*, affirming dismissal of an employee's wrongful discharge claim, the Court found that the employee "... failed to demonstrate a limitation by express agreement on his employer's unfettered right to terminate at will...." In that case, plaintiff alleged the express limitation arose from his employer's personnel policy manual and by various written accounting policies governing plaintiff's employment. The Court found that the em-

ployer designed the personnel manual "... solely for the purpose of determining post-termination benefits," and that the written policies "... merely suggest[ed] standards ..." set by the employer "... for its employees' performance of their duties...." *Sabetay,* 69 N.Y.2d at 336, 514 N.Y.S.2d at 213, 506 N.E.2d at 923.

■ Therefore, unless this Court finds sufficient evidence of an express contractual right limiting defendant's otherwise unfettered right to discharge plaintiff, this Court must grant defendant summary judgment on plaintiff's breach of employment contract claim.

### 2. Express Limit on Defendant's Right To Discharge Plaintiff

Plaintiff concedes that at the time she commenced employment with defendant she did not enter into a written contract and that her employment with defendant was pursuant to "... an oral understanding ..." with defendant that she was hired at defendant's will. (dep., pp. 7, 14).

According to plaintiff, however, the following documents or items constitute a contract between her and defendant which limits defendant's right to discharge her at will: 1) plaintiff's employment application with defendant; 2) defendant's "Hourly Handbook" for its East Aurora, New York plant ("Employee Handbook"); 3) oral representations of job security made by defendant to plaintiff; and 4) what plaintiff generally calls "... the terms and benefits of her employment." (P. fact, ¶ (B)(3); p. memo., p. 1). Apparently, these "terms and benefits" include "... accrued credits toward [plaintiff's] pension ..." and "... all credits toward [plaintiff's] stock option." (p. memo, p. 2). Also, in her summary judgment papers, plaintiff vaguely refers to other items which she alleges constitute a contract between her and defendant. For example, plaintiff claims that her contract with defendant in part consisted of her "... annual reviews." (p. fact, ¶ (B)(3)).

This Court concludes that nothing relied on by plaintiff constitutes an express limi-

tation on defendant's right to discharge plaintiff at will.

■ First, this Court has reviewed plaintiff's employment application and concludes that it in no way limits defendant's right to discharge plaintiff at will. The application asks a prospective employee to provide personal history information including birth date and place and other family history, health history, previous employment history and education history. Nowhere does the application mention any terms and conditions of employment, including discharge, nor does the application reference the Employee Handbook. By no stretch does the employment application limit defendant's right to discharge plaintiff at will.

■ Second, with respect to defendant's Employee Handbook, plaintiff directs this Court to no language which expressly limits defendant's right to discharge plaintiff at will. Instead, plaintiff claims cryptically that "... the Employee Handbook speaks for itself." (p. fact, ¶ (B)(11)). Plaintiff does cite the following in the Employee Handbook which she alleges expressly limits defendant's right to discharge her at will: a) the statement that "[a]t the heart" of defendant's "philosophy" is "... the belief that [defendant] is a company of adult men and women, who can shape their working lives with intelligence and goodwill ..." (Employee Handbook, p. 2); and b) the use of the word "permanent" in the phrase "permanent hire" when referring to the date upon which defendant calculates employee seniority, somehow to suggest that plaintiff's employment was perpetual. (p. memo., p. 3). The first statement is exactly what it says, an expression of defendant's company philosophy. This language falls far short of the type of express contractual limitation contemplated in *Weiner* and *Murphy* necessary to restrict defendant's right to discharge plaintiff at will. As to the second statement, this Court does not accept plaintiff's counterintuitive and painfully labored assertion that use of the word "permanent" next to "hire" in a context unrelated to discharge places a limit on defendant's right to discharge plaintiff at will.

■ Third, with respect to oral assurances of job security, in her entire summary judgment submission, plaintiff directs this Court to only one alleged oral assertion by defendant, an alleged statement by Bruce Engel, apparently an official of defendant, who "told" plaintiff "... biannually ... at profit share meetings that 'we are one large family and we'll all stay together as a family as long as these doors are open.'" (p. memo, pp. 3–4). This lone alleged statement, even by the most generous interpretation, is at best a general policy objective and cannot reasonably be construed to limit defendant's right to discharge plaintiff at will.

In fact, plaintiff's deposition testimony undercuts plaintiff's contention that defendant made oral representations to plaintiff regarding her job security which somehow limits defendant's right to discharge her at will. At her deposition, plaintiff concedes the following: that defendant did not induce plaintiff to leave her previous employment (dep., p. 13); that once hired there were no conditions on plaintiff's employment with defendant (dep., p. 9); and that at no time did plaintiff seek further assurances from defendant with respect to her continued employment. (dep., pp. 13–14). Therefore, this Court finds no factual issue that defendant made oral assurances of job security to plaintiff.

■ Fourth, nowhere does plaintiff state how "the benefits of plaintiff's employment" constitute a limitation on defendant's right to discharge her at will. Plaintiff provides this Court no evidence to support such a proposition. This Court can only guess that plaintiff's argument is that plaintiff's receipt of employee benefits somehow limited defendant's right to discharge her at will. Plaintiff cites no cases for this proposition and this Court locates no such case law. Therefore, this court rejects plaintiff's unarticulated assertion.

■ Lastly, in her summary judgment papers plaintiff argues for the first time, in a vain attempt to defeat a summary judgment for defendant on plaintiff's breach of employment contract claim,[3] that defendant's discharge of plaintiff violated the federal Age Discrimination in Employment Act. Plaintiff does not allege such a cause of action in her complaint and offers this Court no evidence, only a conclusory assertion, in support of this claim. To the extent plaintiff now alleges such a claim, this Court rejects it as entirely unsupported in the record presented.

Therefore, since this Court finds no contract between plaintiff and defendant which limits defendant's right to discharge plaintiff at will, this Court grants defendant's motion for summary judgment with respect to plaintiff's breach of employment contract claim, Count One of the Complaint.

*Defamation (Count Two)*

The substance of plaintiff's defamation claim is contained in paragraph ten of the Complaint which states:

That on or about the 26th day of October, 1988, in the Town of East Aurora, New York, the defendant in the presence and hearing of agents, service [sic] and employees of defendant ... who's [sic] names are unknown to plaintiff, maliciously spke [sic] of in concerning the plaintiff the following false and defamatory words: the plaintiff ... 'stole things from the company.'

---

3. Additionally, although plaintiff does not explicitly argue that an implied contract existed between defendant and plaintiff which limited defendant's right to discharge plaintiff at will, plaintiff cites *Dicocco v. Capital Area Community Health Plan*, 135 A.D.2d 308, 525 N.Y.S.2d 417 (3rd Dept.1988), where the Third Department affirmed denial of summary judgment on plaintiff's breach of implied employment contract claim. Even were this Court to recognize a cause of action under New York law for breach of an *implied* agreement limiting defendant's right to discharge plaintiff at will, which this Court does not in light of the New York Court of Appeals' admonition to the contrary in *Murphy*, 58 N.Y.2d at 304–05, 461 N.Y.S.2d at 237, 448 N.E.2d at 91, and the Second Circuit's in *Wright v. Cayan*, 817 F.2d 999, 1004–05 (2d Cir.1987), *cert. denied*, 484 U.S. 853, 108 S.Ct. 157, 98 L.Ed.2d 112 (1987), for the same reasons discussed above plaintiff has not produced credible evidence of such an implied agreement between plaintiff and defendant.

Defendant moves for summary judgment on plaintiff's defamation cause of action on three primary grounds. First, defendant argues that plaintiff failed to comply with the pleading requirements of New York CPLR 3016(a) (Mackinney 1991). Second, defendant argues that the spoken words came within a qualified privilege and plaintiff offers no evidence of actual malice by defendant necessary to overcome the privilege. And third, defendant argues that the substantial truth of the spoken words defeats plaintiff's defamation claim.

Plaintiff responds that CPLR 3016(a)'s pleading specificity requirements do not apply in federal court and that, pursuant to Fed.R.Civ.P. 8(a), plaintiff's complaint adequately states a cause of action for defamation. Additionally, plaintiff, although she nowhere states it, seems to respond that she has put forth sufficient evidence of actual malice to overcome any qualified privilege. Finally, plaintiff argues that a question of fact exists as to whether the alleged defamatory statements are true.

■■■ Preliminarily, this Court must clarify which statement(s) plaintiff alleges to be defamatory. Although defendant's summary judgment papers indicate that plaintiff alleges two separate instances where defendant defamed her, and although this Court concedes that plaintiff confuses dates in her summary judgment papers with those in the Complaint, based on the allegations in the Complaint and as discussed below, this Court finds that plaintiff alleges only one instance of defamation: that on or about October 26, 1988, a line supervisor named Hazel informed her line workers that plaintiff "stole things" from defendant.[4]

**1. Pleading Specificity**

■■ First, defendant argues that this Court must dismiss plaintiff's defamation claim because plaintiff failed to comply with the pleading requirements of CPLR 3016(a). However, this Court agrees with plaintiff that the pleading requirement contained in CPLR 3016(a) does not apply to this lawsuit.

Although defendant cites *Catterson v. Caso*, 472 F.Supp. 833, 840 (E.D.N.Y.1979), Catterson not only betrays the well established substance versus procedure dichotomy existent in federal diversity cases but contradicts more recent authority from the Second Circuit. Accordingly, this Court declines to follow *Catterson.*

*Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), directs federal courts sitting in diversity cases to apply state substantive law but federal rules of procedure. This rule remains unchanged even where enforcement of the federal procedural rule "... alters the mode of enforcing state-created rights...." *Hanna v. Plumer*, 380 U.S. 460, 473, 85 S.Ct. 1136, 1145, 14 L.Ed.2d 8 (1965). Therefore, Fed.R.Civ.P. 8(a), not CPLR 3016(a) supplies the standard of specificity applicable to the defamation pleading in this case. *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir.1986) ("... in federal diversity cases ... 'the mode of pleading defamation is governed by Rule 8, Fed.R.Civ.P.'") (citations omitted); *Geisler v. Petrocelli*, 616 F.2d 636, 640 (2d Cir. 1980) ("... the mode of pleading defamation [in a diversity case] is governed by Rule 8, Fed.R.Civ.P. ....").

■■ This Court now considers whether plaintiff has pleaded defamation with req-

---

4. In its Memo, defendant indicates that plaintiff also alleges that defendant defamed plaintiff at the October 24, 1988 meeting when defendant's supervisors confronted plaintiff concerning the Smooshies. (d. memo., p. 13). Although this Court does not consider any statements at the October 24, 1988 meeting to constitute the alleged defamation, this Court finds that any statements made at the October 24, 1988 meeting, at which three of defendant's supervisory personnel and plaintiff were present, were not

only protected by a qualified privilege but, as discussed below, plaintiff has failed to produce any credible evidence that, even if such statements were false or imputed criminality, they were actuated by "... express malice or actual ill will." *Rezey v. Golub Corp.*, 73 A.D.2d 772, 773, 423 N.Y.S.2d 535, 538 (3rd Dept.1979), *aff'd*, 52 N.Y.2d 713, 436 N.Y.S.2d 264, 417 N.E.2d 558 (1980); *Caffee v. Arnold*, 104 A.D.2d 352, 478 N.Y.S.2d 683 (2d Dept.1984).

uisite specificity pursuant to Fed.R.Civ.P. 8(a).

Under Fed.R.Civ.P. 8(a), "... the test of a complaint's sufficiency is whether it is detailed and informative enough 'to enable defendant to respond and to raise the defense of res judicata if appropriate.'" *Kelly v. Schmidberger*, 806 F.2d at 46 (quoting *Geisler*, 616 F.2d at 640).

In its Response Affidavit, defendant argues that plaintiff's defamation cause of action fails to meet the requisite specificity under federal law. Defendant cites *Wanamaker v. Columbian Rope Co.*, 713 F.Supp. 533 (N.D.N.Y.1989), where the Northern District dismissed plaintiff's defamation cause of action because the Complaint failed to reference the allegedly defamatory statements, the plaintiff failed to specify who made the comments, when they were made, the context in which they were made, whether the statements were made to a third party, whether the statements were written or oral and, generally, failed to "... set forth in any manner whatsoever the words which [plaintiff claimed were] actionable so as to give defendants notice of the statements at issue." *Id.*, at 545.

In this case, however, plaintiff's Complaint alleges what the statement was, that it was spoken and approximately when it was made. Although the Complaint does not specify which agent(s) of defendant spoke the allegedly defamatory words and which agent(s) of defendant heard the words, this Court concludes that the Complaint is specific enough to enable defendant to "'... respond and to raise the defense of res judicata ...'" and to "'... afford defendant sufficient notice of the communications complained of to enable [it] to defend [itself].'" *Kelly v. Schmidberger*, 806 F.2d at 46 (citations omitted).

■ Moreover, evidence submitted with plaintiff's summary judgment papers identifies that the speaker was a line foreperson named Hazel and that the listeners were assembly line workers on Hazel's line. (dep., p. 51; Sabatowski, ¶ 26; *See* p. memo., p. 7). Especially in light of this additional evidence Defendant cannot now reasonably claim that it has no notice of the statement itself, who said it, who heard it and where and when it was said. *See, Geisler*, 616 F.2d at 640 (when ruling on a Fed.R.Civ.P. 12(b) motion to dismiss a libel claim for failure to specifically allege that the offending material was "of and concerning" plaintiff, the trial judge could, treating the motion as one for summary judgment, consider additional submissions, including affidavits). [5]

■ Therefore, in light of the liberal pleading requirement contemplated in Fed.R.Civ.P. 8(a), this Court concludes that plaintiff's Complaint adequately, though concededly in the most minimal fashion, states a cause of action for defamation.[6]

---

5. This Court notes that, as evidence of the Complaint's insufficiency, defendant emphasizes the fact that plaintiff, at her deposition, testified that when confronted by her supervisors regarding the Smooshies at the October 24, 1988 meeting, the word "stole" was never used by defendant although in her Complaint plaintiff alleges that the defamation consisted of the word "stole." Citing *Volvo North America Corporation v. Men's International Professional Tennis Council, et al.*, 687 F.Supp. 800, 815 (S.D.N.Y. 1988), defendant argues that "... paraphrasing the allegedly defamatory statements is insufficient to state a cause of action for defamation." (Response Affidavit, p. 9). However, this Court has already found that the alleged defamation does not consist of words spoken at the October 24, 1988 meeting. Moreover, since *Volvo*, the Second Circuit has dispensed with an *"in haec*

*verba"* requirement with respect to defamation cases plead in federal court. *Law Firm of Daniel P. Foster v. Turner Broadcasting*, 844 F.2d 955, 958, n. 3 (2d Cir.1988), *cert. denied*, 488 U.S. 994, 109 S.Ct. 559, 102 L.Ed.2d 585 (1988). Therefore, a defamation plaintiff need not plead the precise words spoken.

6. For the first time in its Response Affidavit, defendant argues that plaintiff has failed to allege that she has personal knowledge of the alleged defamatory statements. This Court disagrees. In her affidavit, which she swears is based on personal knowledge, plaintiff states "... upon my dismissal, [defendant's] line foreman from another line announced to the line crew then working that I was a thief and that I had been fired for stealing from [defendant]." (Sabatowski, ¶ 26; dep., p. 51).

## 2. Qualified Privilege

Second, defendant argues that this Court must dismiss plaintiff's defamation cause of action because the alleged defamatory statement was made by defendant to its employees and therefore was protected by a qualified privilege. Defendant next contends that plaintiff offers no evidence of defendant's actual malice necessary to overcome the privilege.

Plaintiff, in conclusory fashion, responds that where a qualified privilege is asserted, "... allegations of criminality ... are not constitutionally protected ..." and constitute "... proof of actual malice." Plaintiff also emphasizes that proof of defendant's ill-will overcomes the privilege. (p. memo., p. 8). Unfortunately, plaintiff produces no specific evidence relative to this case regarding these legal points.

This Court first considers whether the allegedly defamatory statement came within a qualified privilege.

Under New York law, a communication enjoys a qualified privilege where it is made:

> ... bona fide upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty ... if made to a person having a corresponding interest or duty, although it contained criminating matter which, without this privilege, would be slanderous and actionable....

*Kasachkoff v. City of New York*, 107 A.D.2d 130, 134, 485 N.Y.S.2d 992, 995 (1st Dept.1985) (citations omitted), *appeal dismissed*, 65 N.Y.2d 722, 492 N.Y.S.2d 28, 481 N.E.2d 568 (1985).

■ This Court finds that a qualified privilege protects the alleged defamatory statement made by defendant's assembly line foreperson to her line workers; both the speaker and listeners had a common interest in preventing employees from taking company property and otherwise iden-

tifying and discouraging employee conduct, at minimum, violative of defendant's company policy.[7]

■ Plaintiff is simply wrong that an alleged defamatory statement which imputes criminality lies outside the qualified privilege. *Chimenti v. Ellaba*, 104 A.D.2d 354, 478 N.Y.S.2d 685 (2d Dept.1984).

■ To overcome the qualified privilege defense, plaintiff must show the defamatory statements were false and made "... with actual malice, which is defined as personal spite, ill will, or culpable recklessness or negligence." *Misek–Falkoff v. Keller*, 153 A.D.2d 841, 842, 545 N.Y.S.2d 360, 361 (2d Dept.1989). The falsity of the statements, alone, does not demonstrate malice "... unless there is some evidence to show that defendant knew the statements to be false." *Rezey v. Golub Corp.*, 73 A.D.2d 772, 773, 423 N.Y.S.2d 535, 538 (3rd Dept. 1979).

This is not a case where defendant knew the statement to be false. Plaintiff has admitted that: 1) she "took" the Smooshies off their assembly line and placed them in a paper bag (dep., p. 16); and 2) that at the October 24, 1988 meeting she informed her supervisors that she "took" the Smooshies and placed them in the bag but did not offer her supervisors an explanation (dep., p. 39). Moreover, the statement was not so "'... vituperative in ... character ...'" as to justify an inference of malice. *Misek–Falkoff*, 153 A.D.2d at 842, 545 N.Y. S.2d at 362 (citations omitted). Therefore, for purposes of the present motion, plaintiff must provide sufficient direct evidence of actual malice to defeat dismissal of her defamation claim.

■ This Court concludes that plaintiff has failed to raise a factual issue of actual malice. In fact, plaintiff offers not even a hint of an evidentiary basis to support her claim that the alleged defamatory state-

7. At her deposition, plaintiff conceded that removing a Smooshie from its line was "... against company policy." (dep., p. 17).

ment was made with malice. Instead, plaintiff offers the purely conclusory assertions from plaintiff's counsel, a statement from her deposition that the only act of malice was the fact that her name was stated, (dep., p. 52), and statements in her affidavit to the effect that she suffered from "... malicious and vile accusations...." (Sabatowski, ¶ 29).

New York courts have consistently emphasized that conclusory allegations of malice, such as those presented in this case, are insufficient to defeat a qualified privilege. *See, Shapiro v. Health Insurance Plan of Greater New York,* 7 N.Y.2d 56, 194 N.Y.S.2d 509, 163 N.E.2d 333 (1959); *Kasachkoff.*

Because this Court finds that the alleged defamatory statement was qualifiedly privileged and that plaintiff has produced no credible evidence of actual malice to overcome the privilege, this Court need not address the truth defense.

Therefore, since this Court finds the alleged defamatory statement protected by a qualified privilege and that plaintiff has failed to create an issue of fact as to defendant's actual malice, this Court grants defendant's motion for summary judgment with respect to plaintiff's defamation claim, Count Two of the Complaint.

*Intentional Infliction Of Emotional Distress*

The substance of plaintiff's emotional distress claim is contained in paragraphs twelve through fifteen of Count Three of the Complaint. Plaintiff alleges that as a result of being "... forced and coerced into admitting a crime which [she] did not commit" and hearing "... that she was to be made a 'scape goat' for missing merchandise" and to be made "... an example of," she suffered harassment and emotional distress.

Defendant moves for summary judgment on plaintiff's emotional distress claim, arguing that plaintiff's own deposition testimony establishes that she suffered no emotional distress as a result of her discharge.

To recover on her claim of intentional infliction of emotional distress under New York law, plaintiff must prove: "(1) an extreme and outrageous act by the defendant, (2) an intent to cause severe emotional distress, (3) resulting severe emotional distress, (4) caused by defendant's conduct." *Burba v. Rochester Gas and Electric Corp.,* 90 A.D.2d 984, 456 N.Y.S.2d 578, 579 (4th Dept.1982).

■ Initially, this Court concludes that the conduct plaintiff alleges here is not so "... extreme or outrageous ... which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society." *Freihofer v. Hearst Corp.,* 65 N.Y.2d 135, 143, 490 N.Y.S.2d 735, 741, 480 N.E.2d 349, 355 (1985) (citations omitted).

Nonetheless, as discussed immediately below, plaintiff's evidence falls far short of creating an issue of fact with respect to her emotional distress claim for at least two critical reasons. First, plaintiff offers no evidence that she has even suffered emotional distress. In fact, plaintiff's own deposition testimony contradicts her assertion that she has suffered emotional distress. Second, other than the most conclusory of assertions, plaintiff produces absolutely no evidence with respect to defendant's intent to cause severe emotional distress.

■ Plaintiff offers the totality of the following evidence in support of her emotional distress cause of action. In her affidavit plaintiff swears that "... because of the maliciousness and cruelty and the utter disregard for decency in the way I was fired[,] I suffered great and grievous emotional distress inflicted by [defendant]." (Sabatowski, ¶ 27). Plaintiff also swears that she has "... suffered from the malicious and vile false accusations of [defendant] until this very day, and will undoubtedly suffer from these accusations for the rest of my life." (Sabatowski, ¶ 29). Plaintiff further offers the affidavit of her husband, John Sabatowski, where Mr. Sa-

batowski swears that "... on October 24, 1988, my wife came home from work in an extremely grievous and distressed emotional state because she had been fired ..." and that "... ever since my wife's dismissal from [defendant] she has been extremely emotionally upset and has had low self-esteem because of the wrongful accusations made against her by [defendant's] employees." (John Sabatowski, ¶¶ 7–8).

However, aside from these conclusory statements, plaintiff offers not even a modicum of credible evidence that she suffered emotional distress as a result of any of defendant's actions.

Again once subject to cross-examination at her deposition, plaintiff gave testimony which seriously undercut her claim to have suffered emotional distress. In fact, at her deposition, plaintiff admitted not only that at the October 24, 1988 meeting she was neither "forced or coerced" nor harassed, (dep., pp. 60–61), but that she was never the object of an intentional infliction of emotional distress by defendant (dep., p. 62). Even if, as plaintiff's counsel argues, such statement does not constitute a probative admission because it is a "legal conclusion," a characterization which this Court emphatically rejects, other portions of plaintiff's deposition testimony, alone, undermine her claim of having suffered emotional distress. At her deposition, plaintiff further testified that since her discharge, she claimed no mental injuries for which she sought medical, including psychiatric, attention, that since her discharge she had sought no medical or psychiatric treatment at all, that since her discharge she had not sought non-medical counseling and that she was taking no medication as a result of her claimed emotional injuries. (dep., pp. 62–63).

Therefore, since this Court finds that plaintiff has failed to create an issue of fact as to defendant's intentional infliction of emotional distress, this Court grants defendant's motion for summary judgment with respect to plaintiff's emotional distress claim, Count Three of the Complaint.

## CONCLUSION

For the reasons set forth above, this Court holds that there exists no genuine issue of material fact with respect to defendant's liability for breach of contract, defamation or intentional infliction of emotional distress, Counts One through Three of the Complaint, respectively. Therefore, this Court grants defendant's motion for summary judgment in its entirety.

## ORDER

IT HEREBY IS ORDERED, that this Court GRANTS defendant's motion for summary judgment in its entirety and summarily DENIES defendant's motion for sanctions pursuant to Fed.R.Civ.P. 11.

FURTHER, that this Court directs the Clerk of the United States District Court for the Western District of New York to enter final judgment for defendant and to dismiss plaintiff's action in accordance with this decision.

SO ORDERED.