Patricia H. CROSLAN, Plaintiff,

v.

THE HOUSING AUTHORITY FOR THE
CITY OF NEW BRITAIN, et al.,
Defendants.

Civil No. 3:94CV1985 (PCD).

United States District Court,
D. Connecticut.

July 31, 1997.

Brian A. Doyle, Ferguson, Doyle & Springer, Rocky Hill, CT, George C. Springer, Jr., New Britain, CT, for Plaintiff.

Jean Elizabeth Tomasco, Patricia Ellen McCooey, Robinson & Cole, Hartford, CT, Thomas J. Hagarty, Jr., Halloran & Sage, Hartford, CT, for Defendant, Housing Authority for City of New Britain.

Jean Elizabeth Tomasco, Patricia Ellen McCooey, Robinson & Cole, Hartford, CT, E. Timothy Sullivan, Jr., Bernard F. Gaffney, Gaffney, Kane, Reynolds & Sullivan, New Britain, CT, for Defendant, Daniel E. Dilzer.

Jean Elizabeth Tomasco, Patricia Ellen McCooey, Robinson & Cole, Hartford, CT, for Defendants, Jose E. Angulo, Antonio Landrau and Gail O'Keefe.

*RULING ON MOTIONS FOR*
*SUMMARY JUDGMENT*

DORSEY, Chief Judge.

Plaintiff Patricia H. Croslan's ("Croslan" or "plaintiff") action arises from her termination in 1994 from her position as Executive Director of the defendant Housing Authority for the City of New Britain ("NBHA"). Plaintiff's second amended complaint alleges: deprivations of liberty (count one), property (count two) and substantive due process (count three) pursuant to 42 U.S.C. § 1983; breach of contract (count four); breach of covenant of good faith and fair dealing (count five); promissory estoppel (count six); withholding of wages pursuant to Conn. Gen. Stat. § 31–72 (count seven); defamation (counts eight and ten); invasion of privacy by false light (counts nine and eleven); intentional infliction of emotional distress (count twelve); negligent infliction of emotional distress (count thirteen) and; tortious interference with prospective contractual relations (count fourteen).

Defendant Daniel E. Dilzer ("Dilzer") moves for summary judgment on counts one and fourteen. Defendants Dilzer, Antonio Landrau ("Landrau") and Jose E. Angulo ("Angulo") move for summary judgment on count two. Dilzer and Gail O'Keefe ("O'Keefe") move for summary judgment on to counts ten and eleven. NBHA moves for summary judgment on counts six, eight and nine.

For the reasons which follow, summary judgment is granted on count two as to Dilzer, Landrau and Angulo, counts ten and eleven as to Dilzer and O'Keefe, count fourteen as to Dilzer, count six as to NBHA, and counts eight and nine as to NBHA. Summary judgment is denied on count one as to Dilzer, Landrau and Angulo.

## I. BACKGROUND FACTS

Defendant NBHA is a corporation created pursuant to Conn. Gen. Stat. § 8–40 and New Britain ordinance. On February 19, 1991, Croslan entered into a two-year written agreement to serve as executive director of NBHA, which automatically renewed for one year unless otherwise stated. Croslan could only be terminated for good cause under that agreement.

Plaintiff's responsibility was to oversee NBHA's day-to-day operations. However, the powers of NBHA are vested in a Board of Commissioners. When plaintiff was first employed by NBHA, the Board consisted of Connie Wilson Collins ("Collins"), Charles W. Kerr, Peter Tomassetti, Ronald Davis and Thelma Santiago–Phillips.

Plaintiff alleges that in or about October 1993, she received a memorandum from Collins regarding renewal of her contract. A cover note indicated that her contract would be voted on at the next Board meeting, but that it could not be put on the agenda. The memorandum outlined an offer, including an eight percent pay increase, and an increase in vacation and life insurance. Attached to the memorandum was a "board narrative" which made suggestions for and criticisms of Croslan's job performance.

On November 13, 1993, the minutes of the Board meeting reflect a motion to renew Croslan's contract was approved, subject to "some discussion that has to be cleared up with the Executive Director." The minutes do not describe the contract terms. Croslan then wrote a memorandum directing NBHA's Finance Department to implement an eight percent pay increase retroactive to February 19, 1993, the date her original two-year term expired.

In November 1993, Linda Blogoslawski ("Blogoslawski") became mayor of New Britain and appointed Dilzer, her executive aide, O'Keefe and Landrau to replace Collins, Tomassetti and Kerr ("New Board"). In early 1994, Croslan's contract and raise were questioned, in particular, whether she had a written employment agreement and whether the raise had been authorized. Croslan did not provide Collins' October 1993 memorandum to the New Board. Newspaper articles covered the raise and contract issues and the issues were discussed at Board meetings.

In July 1994, plaintiff applied for a position with the Alexandria, Virginia, Housing and Redevelopment Authority ("ARHA"). On July 26, 1994, ARHA offered her a position subject to reference checks. On July 28,

1994, Elisa Hutcoe ("Hutcoe"), a *Herald* reporter, sent articles regarding the controversy in New Britain to the Alexandria City Manager's office via facsimile. Thus aware of the articles, the ARHA board voted not to offer Croslan a contract.

On December 28, 1994, the NBHA Board voted to terminate Croslan's employment effective January 21, 1995. No public hearing was provided to Croslan.

## II. DISCUSSION

### A. *Summary Judgment Standard*

Summary judgment is granted when, from the pleadings and the evidence, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The non-moving party must "set forth specific facts showing that there is a genuine issue for trial," otherwise the motion will be granted. Fed.R.Civ.P. 56(e). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A "genuine" factual issue exists where "the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual issue is not "material" unless it "might affect the outcome of a suit under governing law." *Id.* All reasonable inferences must be drawn in favor of the non-moving party in deciding whether there is a genuine issue of material fact. *Id.* at 255, 106 S.Ct. at 2513–14.

### B. *Individual Defendants*

#### 1. *Deprivation of Property Interest (Count Two)*

Dilzer, Landrau and Angulo move for summary judgment on count two which alleges that defendants deprived plaintiff of her property right to continued employment with NBHA under the Due Process Clause of the Fourteenth Amendment.

To prevail on this claim, plaintiff must show that she had a property right in contin-

ued employment. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Plaintiff must have had "a legitimate claim of entitlement" to the continued employment. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Plaintiff could not be deprived of such a property interest without a pre-termination hearing. *Loudermill*, 470 U.S. at 542, 105 S.Ct. at 1493; *Board of Regents*, 408 U.S. at 569–70, 92 S.Ct. at 2705.

█ Such property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents*, 408 U.S. at 577, 92 S.Ct. at 2709. Where restrictions exist as to how an employee may be terminated, the employee has a constitutionally protected property interest. *O'Donnell v. Village of Downers Grove*, 656 F.Supp. 562, 566–67 (N.D.Ill.1987); *see Gates v. Sicaras*, 706 F.Supp. 169, 172 (D.Conn.1989). Plaintiff claims that she had a written contract which provided that she could be terminated only for cause. Defendants claim that she was an employee-at-will.

█ It is unnecessary, for purposes of this motion, to determine whether plaintiff, as a legal matter, was an at-will employee, as defendants are entitled to qualified immunity. "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) [1]; It must be objectively reasonable for an official to believe his acts were consistent with such rights. *Anderson v. Creighton*, 483 U.S. 635, 638–39, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987); *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir.1994). Even if the law was clearly established, if an offi-

---

1. The parties do not dispute that the individual defendants were performing discretionary func- tions when the allegedly wrongful acts occurred.

cial "claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained." *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2738.

Although it is clearly established that an employee serving pursuant to an employment agreement which provides that she may be terminated only for cause has a protected property interest, defendants assert that the undisputed facts show that it was objectively reasonable for them to believe that Croslan was an at-will employee who could be terminated without cause, and thus without a pre-termination hearing. In or about April 1994, the Board of Commissioners requested a legal opinion from Sledzik & McGuire as to the status of Croslan's employment. (Dilzer Dep. at 59–60.) The opinion, dated June 6, 1994, was based on the minutes of the November 10, 1993 NBHA Board of Commissioners meeting, Croslan's written agreement dated February 19, 1991 and the Personnel Policy for NBHA. (Legal Opinion, June 6, 1994, Def.'s Ex. I.) The legal opinion concluded:

> What the Board of Commissioners intended to accomplish when they unanimously voted to renew the Executive Director's Contract at the November 10, 1993 meeting is a complete mystery. Factually on that date, the Executive Director was legally employed under a valid written employment agreement with the Authority and that agreement did not terminate until February 18, 1994. The motion unanimously passed by the Board of Commissioners to renew the Executive Director's Contract from February 1993 was not necessary because the Executive Director was legally employed at that time under a valid written agreement between the parties. If the intent of the Board of Commissioners was to extend the Executive Director's Agreement beyond February 18, 1994 then the vehicle to accomplish that intent is spelled out in the Employment Agreement between the parties, or if the intent of the Board was to renew the Executive Director's Employment Agreement after it terminated on February 18, 1994, the vehicle to accomplish that intent is spelled out in the Personnel Policy of the Housing Authority of the City of New Britain. Without the availability of additional information to determine the intent of the Board of Commissioners when the Board, on November 10, 1993, unanimously passed the motion to renew the Executive Director's Contract from February 1993, our opinion is that Patricia Holden Croslan is currently an at will employee of the Housing Authority of the City of New Britain.

(*Id.*) Furthermore, Sledzik & McGuire found that Croslan did not have an oral contract. (*Id.*)

Plaintiff asserts that this opinion did not consider all available information. In particular, she points out that although Dilzer made a Freedom of Information Act request for documents relating to a contract, (Dilzer Dep. at 102–03), he did not ask Croslan for any relevant documents in her possession, (*id.*), nor did he inquire of Collins about this issue. (*Id.* at 103–04.)

Plaintiff has introduced no evidence that defendants knew or should have known that the contract was renewed or extended after February 18, 1994. On October 14, 1994, in a letter addressed to the Chairman of the Housing Authority, plaintiff's counsel stated the following:

> Reliance on this legal opinion is misplaced. First, it was admittedly written without the benefit of key information. Indeed, the opinion relied exclusively on Ms. Croslan's prior written contract, the November 10, 1993 minutes of the Board and the Personnel Policy of the Housing Authority—nothing else. Second, the opinion notes that at the time the Board voted to extend Ms. Croslan's two-year contract from February 1993, she was 'legally employed under a valid written employment agreement with the Authority and that agreement did not terminate until February 18, 1994.' An explanation not covered in the opinion is that the Board intended to extend her contract two years from the date of its expiration which, by virtue of this opinion, is February, 1996 not 1995.

(Landrau Dep., Exh. 7.) Notably, plaintiff's counsel's opinion does not point to other evi-

dence that defendants should have considered in determining whether plaintiff was then under a contract. Moreover, because renewal of the Executive Director's contract would have to be acted on by the Board, it was objectively reasonable for defendants to presume that any documents demonstrating that this was done, as well as the terms of any agreement, would be in the records of NBHA.

■ Although the Second Circuit does not appear to have addressed the issue, reliance on legal advice may constitute "extraordinary circumstances" entitling an official to qualified immunity. In *Mitchell v. Coffey County Hosp.*, 903 F.Supp. 1415 (D.Kan.1995), a maintenance supervisor alleged that Coffey County Hospital, the hospital's board of trustees, the hospital's executive director and individual members of the board of trustees had violated his due process rights by terminating his employment without a hearing. *Id.* at 1419. The individual defendants claimed qualified immunity on the due process claim based on "extraordinary circumstances" in their reliance on legal advice in concluding that plaintiff was an at-will employee. *Id.* at 1426. It was held that whether legal advice constituted "extraordinary circumstances" depended on the circumstances. The Court concluded that although evidence of oral assurances made by hospital administrators may have created a fact issue as to whether plaintiff had an implied contract, plaintiff failed to introduce evidence that defendants were aware of these statements or should have been aware of them. Accordingly, it was found that the individual defendants were qualifiedly immune because plaintiff did not have a clearly established right to employment of which defendants reasonably should have known. *Id.*

There is evidence that written assurances were made by Collins to Croslan detailing an offer reflecting increases in life insurance, vacation time, and pay. (Dilzer Exh. E.)

However, as in *Mitchell,* plaintiff has not shown that defendants were aware of these statements or should have been aware of them.[2]

Accordingly, defendants are qualifiedly immune from suit on count two and the motion for summary judgment on this count is granted.

### 2. Deprivation of Liberty Interest (Count One)

■ Defendants also move for summary judgment on count one, which alleges that plaintiff was deprived of her liberty interest without due process of law.

A government employee's liberty interest is implicated where the government dismisses him based on charges 'that might seriously damage his standing and associations in his community' or that might impose 'on him a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities.' For example, charges that the employee is guilty of dishonesty or immorality are stigmatizing because they call into question the person's 'good name, reputation, honor, or integrity.' In addition, the charges against the employee must be made 'public' by the government employer, and the employee must allege that the charges are false. Where the employee's liberty interest is implicated, he is entitled under the due process clause to notice and an opportunity to be heard.

*Brandt v. Bd. of Co-op. Educ. Services,* 820 F.2d 41, 43 (2d Cir.1987) (citations omitted). Contrary to defendants' assertions, plaintiff need not show that she had a property interest in continued employment to assert deprivation of a liberty interest. *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1063 (2d Cir.1993), *cert. denied,* 510 U.S. 865, 114 S.Ct. 185, 126 L.Ed.2d 144 (1993).

Defendants assert that, as for plaintiff's property interest due process claim they are

---

**2.** Plaintiff alleges numerous alleged bad faith motives and actions of defendants in pursuing her termination without a hearing and brings forth volumes of evidence to prove these claims. Because plaintiff did not have a clearly established right to employment of which defendants should have known, i.e., an employment contract

which provided she could only be terminated for cause, defendants are qualifiedly immune from a claim that plaintiff could be terminated only for cause. Therefore, although these alleged motives behind the termination may be relevant to other claims of plaintiff, they are irrelevant to the analysis of the due process claim.

entitled to qualified immunity on the liberty interest claim because of their reliance on the legal opinion that plaintiff was an at-will employee. However, as noted above, it was clearly established at the time of plaintiff's termination that even if plaintiff was an at-will employee, if she faced charges accusing her of improprieties, she was entitled to notice and an opportunity to be heard. Plaintiff was terminated amid a variety of accusations, including possible improprieties, misappropriation of funds, professional incompetence, and the unauthorized issuance of an 8% raise for herself. As defendants merely assert reliance on the legal opinion, they have not shown that they neither knew nor should have known of this legal standard applicable to deprivation of a liberty interest, they are not entitled to qualified immunity on this claim.

Accordingly, defendants' motion for summary judgment on count one is denied.

3. *Defamation and Invasion of Privacy by False Light (Counts Ten and Eleven)*

Plaintiff alleges defamation and invasion of privacy by false light against Dilzer and O'Keefe. For the reasons discussed in Sections C.2 and C.3, infra, the motion for summary judgment on counts ten and eleven is granted.

4. *Tortious Interference with Prospective Contractual Relations (Count Fourteen)*

■ Defendant Dilzer moves for summary judgment on plaintiff's tortious interference with prospective contractual relations claim (count fourteen). Plaintiff claims that Dilzer disseminated false and defamatory information or encouraged others, i.e., Hutcoe, the *Herald* reporter, to disseminate false and defamatory information regarding plaintiff to persons in Virginia or at the ARHA believing that the information would be further publicized. She claims that Dilzer disseminated the information to interfere with plaintiff's ability to secure a formal employment contract with the ARHA, and as a result of the dissemination of the information, ARHA refused to formally extend her an offer. Defendant asserts that based on the undisputed facts, defendant is entitled to summary judgment as a matter of law.

■ The elements of a tortious interference claim include a contractual or beneficial relationship, or a prospective contractual relationship or business expectancy, knowledge by defendant of that relationship, intentional interference with the relationship and actual loss suffered by plaintiff. *Solomon v. Aberman,* 196 Conn. 359, 364, 493 A.2d 193 (1985); *Sportsmen's Boating Corp. v. Hensley,* 192 Conn. 747, 754, 474 A.2d 780 (1984); *Harry A. Finman & Son, Inc. v. Connecticut Truck & Trailer Service Co.,* 169 Conn. 407, 415, 363 A.2d 86 (1975). Plaintiff must show that defendant's conduct was in fact tortious, which may be satisfied by proof of fraud, misrepresentation, intimidation, molestation or maliciousness. *Solomon,* 196 Conn. at 365, 493 A.2d 193; *Sportsmen's Boating,* 192 Conn. at 754, 474 A.2d 780.

Dilzer contends that it is undisputed that: 1) he provided a positive recommendation of plaintiff to the Chairman of ARHA, Stephen Newman; 2) he may not have been the source of information to Hutcoe regarding Croslan's job offer; and 3) Hutcoe, at the request of an Alexandria official, transmitted copies of newspaper articles concerning Croslan. Without addressing whether the facts in (1) and (3) are disputed, the second "undisputed" fact is, in fact, a disputed fact which precludes summary judgment.

In response to inquiry as to her source of information regarding Croslan's job offer from ARHA, Hutcoe first testified that she couldn't remember who told her. (Hutcoe Dep. at 94.) When asked if her source was Dilzer, she responded: "I don't think so." (*Id.* at 94.) Later, to clarify, plaintiff counsel asked: "It might have been Mr. Dilzer, but you are not sure, that's your testimony?" (*Id.* at 95.) Hutcoe responded: "Yes. I don't think it was, but I think I would have remembered it and had different feelings in my head about it, different memories." (*Id.*)

When determining whether summary judgment is appropriate, "the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party, and it may not properly grant summary judgment where the issue turns on the credibility of witnesses. Any assessments of cred-

ibility and all choices between available inferences are matters to be left for a jury...." *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 517 (2d Cir.1994). Hutcoe has not unequivocally testified that Dilzer *did not* provide her with the information that Croslan had been made a job offer. Therefore, an assessment of her credibility and the reasonable inferences to be drawn from her testimony are for the jury to decide.

Therefore, as a genuine issue of disputed fact exists, i.e., whether Dilzer encouraged the dissemination of false and defamatory information regarding Croslan by contacting Hutcoe, summary judgment on this count is denied.

### C. Defendant New Britain Housing Authority

#### 1. Promissory Estoppel (Count Six)

■ Plaintiff's sixth count alleges that NBHA made representations amounting to a clear and definite promise of continued employment which she could have reasonably been expected to rely on to her detriment and upon which she did so rely. Defendant asserts that Collins, on whose representations Croslan claims she relied, did not have the power to bind NBHA, and furthermore, Croslan has not shown detrimental reliance.

■ There are two essential elements to a promissory estoppel claim:

[T]he party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief and the other party must change its position in reliance on those facts, thereby incurring some injury....

[A] person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge.

*Connecticut Nat'l Bank v. Voog*, 233 Conn. 352, 366, 659 A.2d 172 (1995) (citations and internal quotations omitted); *see also D'Ulisse–Cupo v. Bd. of Dir. of Notre Dame High Sch.*, 202 Conn. 206, 213, 520 A.2d 217 (1987). Moreover, estoppel against a public agency is limited. It may be invoked: "(1) only with great caution; (2) only when the action in question has been induced by an agent having authority in such matters; (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency." *Kimberly–Clark Corp. v. Dubno*, 204 Conn. 137, 148, 527 A.2d 679 (1987). Promissory estoppel will not lie unless the party asserting it would suffer substantial loss if the public agency could negate its agent's acts. *Id.*

■ Defendant's assertions regarding Collins' authority to bind the NBHA need not be addressed because plaintiff fails to offer any facts which create a genuine issue of material fact regarding detrimental reliance. Plaintiff claims that, "[i]n reliance on the repeated representations and assurances that I received from the Housing Authority that I had continued employment there, I did not actively seek or pursue employment elsewhere." (Croslan Declaration, ¶ 16.) Forbearance from seeking job opportunities is not sufficient to show detrimental reliance for purposes of promissory estoppel.[3] *See Panzino v. Scott Paper Co.*, 685 F.Supp. 458,

---

**3.** Even if evidence of forbearance were sufficient to show detrimental reliance, plaintiff has failed to produce facts sufficient to show that she refrained from searching for other job opportunities in reliance on defendant's alleged promises. At her deposition, in response to an inquiry regarding when she actually began looking for other employment, Croslan stated:

I always look for employment. If I see something that comes through that might be interesting, I'll always send out a resume and get an interview because I always like to know what questions are being asked and what's going on and who is looking for what. So I choose places that would be a place that I

might consider. Any time I see a place I send out a resume. I do that all the time.

(Croslan Dep. at 232.) However, in a later dated declaration, she states that "I sent resumes to other potential employers to, among other things, keep abreast of the current selection criteria of executive directors in other Housing Authorities or agencies and to network with other professionals in my field of expertise." (Croslan Declaration, ¶ 16.) A party may not, to defeat a summary judgment motion, create a material issue of fact by disputing his own prior sworn testimony. *Trans–Orient Marine v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir.1991).

462 (D.N.J.1988) (plaintiffs alleging forbearance could provide no evidence that earlier applications to other employers would have yielded jobs, and therefore summary judgment for defendant was granted because the jury would be reduced to speculation, which is inadequate basis for finding detrimental reliance); *Engstrom v. John Nuveen & Co., Inc.,* 668 F.Supp. 953, 962–63 (E.D.Pa.1987) ("[Plaintiff's] failure to seek other employment is not forbearance of a definite and substantial character as a matter of law because there is not sufficient evidence from which a reasonable person could find that Engstrom failed to look for other work *in detrimental reliance* on the alleged promises.") (emphasis in original).

Accordingly, defendant's motion for summary judgment on the promissory estoppel claim (count six) is granted.

### 2. *Defamation (Count Eight)*

 Plaintiff's eighth count alleges that "[t]he Housing Authority, by and through members of the Board, made numerous public statements charging Croslan with misappropriating Housing Authority funds by issuing a raise for herself and charging her with general professional incompetence in the conduct of her position." (Am. Compl., Count Eight, ¶ 153.)

Defendant claims that plaintiff has failed to sufficiently allege the false and defamatory statements. In relation to her defamation claim against NBHA, plaintiff alleges that "Dilzer publicly stated that he wanted to review Croslan's performance because it provided an opportunity to raise 'possible improprieties.' He also stated that Croslan acted improperly when she accepted her pay increase." (Second Am. Compl., First Count, ¶ 111.) Plaintiff further alleges that NBHA, acting through the Board, "made numerous public statements charging Croslan with misappropriating Housing Authority funds by issuing a raise for herself and charging her with general professional incompetence in the conduct of her position." (*Id.* Eighth Count, ¶ 187.)

The Second Circuit does not require *in haec verba* pleading, i.e., of the exact alleged defamatory words. *Kelly v. Schmidberger,* 806 F.2d 44, 46 (2d Cir.1986); *Law Firm of*

*Daniel P. Foster v. Turner Broadcasting Sys., Inc.,* 844 F.2d 955, 962 n. 3 (2d Cir. 1988), *cert. denied,* 488 U.S. 994, 109 S.Ct. 559, 102 L.Ed.2d 585 (1988). However, based on Fed.R.Civ.P. 8, the complaint must be "detailed and informative enough 'to enable defendant to respond and to raise the defense of res judicata if appropriate....' The complaint must 'afford defendant sufficient notice of the communication complained of to enable him to defend himself.'" *Kelly,* 806 F.2d at 46 (citations omitted).

These standards resulted in dismissal of the defamation action in *Wanamaker v. Columbian Rope Co.,* 713 F.Supp. 533, 545 (N.D.N.Y.1989), *aff'd,* 108 F.3d 462 (2d Cir. 1997). Plaintiff alleged that all of the defendants had defamed him "by speaking and/or writing or circulating malicious, untrue and damaging comments about his job performance." The court held that the pleading lacked the requisite specificity, in that plaintiff failed to specify who made the comments, when and in what context they were made, whether they were communicated to a third party, whether the statements were written or oral, and did not set forth "in any manner whatsoever" the words he claimed to be actionable. *Id.*

On the other hand, in *Sabatowski v. Fisher Price Toys,* 763 F.Supp. 705 (W.D.N.Y.1991), plaintiff's complaint was found sufficient. Plaintiff alleged on a certain date in a New York town, "the defendant in the presence and hearing of agents, service [sic] and employees of defendant ... who's [sic] names are unknown to plaintiff, maliciously spke [sic] of in concerning the plaintiff the following false and defamatory words: the plaintiff ... 'stole things from the company.'" *Id.* at 712.

In determining whether the complaint was sufficiently detailed, the court noted that the complaint alleged what the statement was, that it was spoken and the approximate time it was made. *Id.* at 714. Although it did not specify who spoke the words and who heard them, the court found the pleadings sufficient under the *Kelly v. Schmidberger* standard. *Id.* Moreover, the court noted that the evidence submitted with plaintiff's summary

**170**

judgment papers identified the speaker and who heard the words. *Id.* In light of that information, the court found that defendant could not reasonably claim it did not have sufficient notice. *Id.*

Although plaintiff's complaint is more specific than the complaint in *Wanamaker*, in that it identifies the subject matter of the statements (some more generally than others) it fails to state who heard them, when they were made, and the context in which they were made. Accordingly, the complaint fails to state a defamation claim with sufficient specificity.

Moreover, even if, as in *Sabatowski*, additional evidence produced by plaintiff is considered, plaintiff has failed to identify the statements with sufficient specificity. In discovery, plaintiff made the following additional declaration as to the statements she alleged were defamatory:

Commissioners of the Housing Authority for the City of New Britain, most notably Commissioners Daniel E. Dilzer and Gail O'Keefe, made numerous public statements charging me with lack of skill, mismanagement and general incompetence in connection with the performance of my professional duties as the Executive Director of the Housing Authority. Such statements were made in connection with the conduct of Housing Authority Board meetings and were publicized to and re-publicized in several newspapers. These same Commissioners also charged that I acted improperly by taking Housing Authority funds without approval from the Board of Commissioners in connection with a salary and benefit increase. These charges, particularly in the context that they were made, amounted to an accusation of theft and misappropriation of funds and inferred wrongful, dishonest, and self-serving activities on my part. These statements, which were made in connection with Board meetings, were also publicized to and re-publicized in newspapers. Daniel Dilzer told others, such as W. Sawyer Shirley, the consultant hired by the Housing Authority to conduct a management assessment, that I had endorsed two checks for myself against Housing Author-

ity funds infering [sic] that such money had been misappropriated as well.

(Pl.'s Response to Interrogatory No. 13 dated July 17, 1995, Def.'s Joint Exh. A.) Plaintiff then identifies 55 newspaper articles in which she claims these statements were reported or reflected. (*Id.*) She also identifies twenty-two board meetings at which she says the statements were made, but admits that she cannot recall the specific dates they were made. (*Id.*)

Plaintiff fails to provide the detail necessary for defendant to defend. The particular communications complained of are not identified with sufficient detail to determine what specific statements plaintiff alleges are defamatory. For example, plaintiff alleges that Dilzer and O'Keefe made "numerous public statements charging me with lack of skill, mismanagement and general incompetence." She fails to identify the specific subject matter of those statements, the times when the statements were made, and the context in which they were made. In fact, she admits that she cannot recall when the statements were made. Referring to 55 newspaper articles and 22 board meetings does not produce the specificity necessary for defendant to identify each statement plaintiff claims actionable.

Plaintiff also claims in the discovery response that Dilzer and O'Keefe charged her with taking NBHA funds without approval in connection with a salary and benefit increase. Although plaintiff identifies the subject matter of the alleged defamatory statements, she does not identify when they were made or the context in which they were made with sufficient specificity, as she simply refers to the newspaper articles and board meetings.

She lastly claims that Dilzer told W. Sawyer Shirley that she had endorsed two checks for herself against housing authority funds. Again, she fails to allege when and in what context the statement was made.

Unlike *Sabatowski*, where one allegedly defamatory statement was made, in this case, plaintiff claims numerous defamatory statements made over an expansive time period. Her failure to plead the defamation action with sufficient specificity makes it impossible

for defendant to identify and present, and for the court to evaluate, specific defenses which might be available for each particular statement.

Not only has plaintiff failed to sufficiently allege the defamatory statements, she has failed to present a disputed issue of fact as to the specific defamatory statements. To impose liability for defamation, plaintiff must prove that defendant published a false statement that harmed plaintiff, and that defendants were not privileged to do so. *Kelley v. Bonney,* 221 Conn. 549, 563, 606 A.2d 693 (1992).[4]

In response to the claim that she has not identified the particular defamatory statements, she asserts that she has "stated that Dilzer and O'Keefe accused her of taking Housing Authority funds in connection with her pay increase without authority to do so and of being guilty of generally incompetence and mismanagement. Croslan cannot get anymore specific than that nor is she required to." (Pl.'s Memorandum of Law in Opposition to Def.'s Mot. for Summ. J. at 13.) To the contrary, plaintiff bears the burden of identifying the particular statements that she claims are defamatory. General assertions regarding speakers and subject matter are not sufficient to present a disputed issue of material fact regarding the actual defamatory statements that were made.[5]

Accordingly, NBHA's motion for summary judgment on count eight is granted.

### 3. *Invasion of Privacy by False Light (Count Nine)*

In count nine, plaintiff alleges that the defamatory statements made by plaintiff portrayed her in a false light. As an invasion of privacy by false light action is subject to the same specificity requirements as a defa-

mation action, *see Ersek v. Township of Springfield, Delaware County,* 822 F.Supp. 218, 223 (E.D.Pa.1993), and plaintiff has not identified the defamatory statements sufficiently, the motion for summary judgment on count nine is granted.

### III. CONCLUSION

Accordingly, the motion for summary judgment of Dilzer, O'Keefe, Landrau and Angulo (doc. 66) is **granted in part, denied in part.** The motion for summary judgment of NBHA (doc. 70) is **granted.** Summary judgment is granted on count two as to Dilzer, Landrau and Angulo, counts ten and eleven as to Dilzer and O'Keefe, on count fourteen as to Dilzer, on count six as to NBHA, and on counts eight and nine as to NBHA. Summary judgment is denied on count one as to Dilzer, Landrau and Angulo.

SO ORDERED.

---

4. Furthermore, if plaintiff is a public official, she may not recover damages unless she proves by clear and convincing evidence that the statement was published with " 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan,* 376 U.S. 254, 280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964). However, whether plaintiff is a public official and whether disputed facts exist as to "actual malice" need not be addressed, as plaintiff has failed

to show a disputed issue of fact regarding the existence of defamatory statements.

5. Not only does plaintiff fail to cite to the record to identify specific defamatory statements in her memorandum in opposition, but her statement of disputed material facts also contains no cites to the record. Plaintiff is required to point to the specific facts in the record that support her position. *See* 11 *Moore's Federal Practice,* § 56.10[4][c] (3d ed. 1997).