David B. LINKER, Plaintiff,

v.

KOCH INVESTMENTS, INC. and Koch Industries, Inc., Defendants.

No. 3:97 CV 1816(GLG).

United States District Court, D. Connecticut.

July 30, 1999.

Jonathan B. Orleans, Zeldes, Needle & Cooper, Bridgeport, CT, Jeffrey L. Liddle, Laurence S. Moy, Michael Grenert, Liddle & Robinson, New York City, for Plaintiff.

Wendi J. Kemp, Cummings & Lockwood, Hartford, CT, Marc L. Zaken, Cummings & Lockwood, Stamford, CT, Mark V. Holden, Koch Industries, Inc., Wichita, KS, Jay E. Bovilsky, Cummings & Lockwood, New Haven, CT, Robert M. Dombroff, Bingham Dana, Hartford, CT, for Defendants.

## MEMORANDUM DECISION

GOETTEL, District Judge.

Plaintiff David B. Linker brought this employment-related action against defendants Koch Investments, Inc. and Koch Industries, Inc. (collectively "Koch"). Pursuant to Federal Rule of Civil Procedure 56, defendants move for summary judgment on all counts of plaintiff's five-count complaint. For the following reasons, defendants' motion is DENIED.

## FACTS

For purposes of this decision, we construe the facts in a light most favorable to plaintiff, and we resolve all ambiguities and draw all reasonable inferences against Koch. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On June 7, 1996, plaintiff began working as a Trader of mortgage-backed securities at the offices of Koch Investments in Greenwich, Connecticut. Koch Investments is a wholly-owned subsidiary of Koch Industries which is based in Wichita, Kansas. Plaintiff was offered a salary of $150,000 per year (or $12,500 per month) and a signing bonus of $25,000. The primary factual issue in this case is whether plaintiff was also promised a year-end bonus of multiples of his base salary.

Plaintiff asserts that Koch executives informed him that Koch Industries would provide Koch Investments with $100 million in capital, for a minimum of three years, which could be leveraged up to $1 billion. The traders in the proprietary group, including plaintiff, would be able to utilize this capital to take positions in their trading book. When plaintiff began his employment, Koch Industries had not provided these funds, and thus plaintiff could not begin proprietary trading. Instead, plaintiff and another trader, Sten Bergman, were instructed to trade in the customer account of Amalgamated Life Insurance Company, which they did from June through November 1996. Sometime in December, plaintiff was authorized to conduct proprietary trading with certain restrictions.

Then, on January 31, 1997, Koch informed plaintiff that it would be closing its Greenwich office no later than March 31, 1997. At about the same time, Koch notified plaintiff that he would not receive any incentive compensation bonus for 1996. Ex. 55. Koch offered plaintiff a position in its Wichita office, but plaintiff rejected that offer. His employment subsequently terminated.

## DISCUSSION

Plaintiff filed a five-count complaint alleging breach of contract, promissory estoppel, negligent misrepresentation, *quantum meruit*, and violation of Connecticut's wage law. Defendants now move for summary judgment on all counts of plaintiff's complaint. A court may grant summary judgment only if it determines that there is no genuine issue of material fact based on a review of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Fed.R.Civ.P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H.*

*Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

## I. BREACH OF CONTRACT

In Count One, plaintiff asserts that Koch breached an oral contract to pay him a year-end bonus for 1996 of multiples of his salary based on a bonus pool of 15–20% of the profits generated from proprietary trading, and based on his contribution to the net present value of Koch, regardless of whether there were profits from proprietary trading. In connection with this contract, plaintiff asserts that Koch Industries promised to provide Koch Investments with $100 million in capital for the proprietary trading operations, for a minimum of three years, and to permit Koch Investments to leverage that amount up to $1 billion. Plaintiff also claims that Koch breached this promise, even though he acknowledges that Koch retained the right to withdraw the capital commitment at any time if the proprietary trading operation lost between $25 and $35 million. Linker Dep. at 227–28. Plaintiff admits that none of these promises were made in a signed writing. Pl.'s Mem. in Opp'n to Defs.' Mot. for Leave to Amend their Answer, dated 3/9/99, at 8. He also concedes that he was an at-will employee. Linker Dep. at 256–57.

Defendants argue that the contract alleged by plaintiff is too indefinite to be enforced. Defendants further assert that there was no meeting of the minds between the parties on the essential terms of the alleged contract, including plaintiff's entitlement to bonus compensation, how the bonus would be calculated, who was to be included in the bonus pool, what plaintiff's share of the bonus pool would be, and who would make those decisions.

 Under Connecticut law, plaintiff bears the burden of proving the existence

of an agreement, which "must be definite and certain as to its terms and requirements." *Suffield Development Associates Ltd. Partnership v. Society for Savings,* 243 Conn. 832, 843, 708 A.2d 1361, 1366 (1998) (citation omitted). In the absence of express contract language, generally "the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact." *Gaudio v. Griffin Health Servs. Corp.,* 249 Conn. 523, 533, 733 A.2d 197 (1999) (quoting *Bead Chain Mfg. Co. v. Saxton Prods., Inc.,* 183 Conn. 266, 274–75, 439 A.2d 314, 319 (1981)). Inferences of fact are questions for the jury. *Id.*

 After reviewing the lengthy exhibits and excerpts from deposition transcripts, we conclude that defendants have not sustained their burden of proving the absence of a genuine issue of material fact. Plaintiff testified that Koch executives informed him that bonuses would be paid to the trading group based on 15–20% of trading profits earned from the trading operations. *See, e.g.,* Linker Dep. at 147–51, 181–84, 190–91. Plaintiff also supplied the affidavit of a compensation consultant who stated that a bonus pool of 15–20% of trading profits is standard in the industry.[1] Johnson Aff. of 5/25/99, ¶ 3. Plaintiff further submitted the affidavit of Thomas A. Kendall, his former supervisor and a former Managing Director and Chief Investment Officer within Koch Capital Services, who participated in the decision to hire plaintiff. Kendall stated that his understanding was that plaintiff and the other traders would be "given the opportunity to perform and to earn bonuses equal to many multiples of their base salary." Kendall Aff. of 5/25/99, ¶ 4. We find that this evidence is sufficient to create a genuine issue of material fact as to whether the

---

1. The credibility of plaintiff's expert witness, Alan Johnson, will be an issue for the jury. Contrary to defendants' assertions, we do not find Johnson's affidavit to be inconsistent with his deposition testimony. Indeed, at his deposition he testified that in a large bank which hires a trader to invest its own monies, it is "quite common" for the company to give the employee 15–20% of the profits. Johnson Dep. at 49–50.

parties agreed that plaintiff would receive a bonus based on 15–20% of trading profits. *See Presidential Capital Corp. v. Reale,* 231 Conn. 500, 507, 652 A.2d 489, 492 (1994) (stating that "[w]hether and on what terms a contractual commitment has been undertaken are ultimately questions of fact for the trier of facts") (citation and internal quotation marks omitted). We note that the parties disagree on whether the bonuses were to be paid as a percentage of trading profits, from trading profits less expenses, or from accounting profits. Accordingly, questions for the jury will include whether the parties had an implied contract on bonus compensation, how the bonus would be paid, and the amount of the bonus. *See id.* at 507–08, 652 A.2d at 493 (concluding that the defendant's promise to pay a commission was not unenforceable solely because there was no agreement on the specific amount of the commission; rather the jury was permitted to consider to consider that the defendant agreed to pay a reasonable fee and then to determine the amount). Consequently, we deny summary judgment to defendants on Count One.

## II. PROMISSORY ESTOPPEL

■ Count Two avers that defendants should be estopped from denying plaintiff bonus compensation for 1996. Specifically, plaintiff asserts that defendants made clear and definite promises when they stated that they would pay him a bonus based on of multiples of his salary, and that Koch Industries would provide Koch Investments with $100 million in capital, for a minimum of three years, which could be leveraged up to $1 billion. Compl. ¶ 48. He further claims that Koch reasonably could have expected that he would act, or refrain from acting, in reliance on these promises. *Id.* ¶ 49; *see D'Ulisse–Cupo v. Board of Directors of Notre Dame High School,* 202 Conn. 206, 213, 520 A.2d 217, 221 (1987) (setting forth the elements for a

cause of action for promissory estoppel). For reasons similar to those set forth in the section above on plaintiff's breach of contract claim, we find that there are issues of fact as to whether Koch made clear and definite promises to plaintiff.

Construing the facts in a light most favorable to plaintiff, we further find that there are issues of fact as to whether plaintiff relied on Koch's promises to his detriment, and whether his reliance was reasonable. Plaintiff asserts he reasonably relied on Koch's promises to his detriment by rejecting other employment offers and by not seeking additional employment opportunities. Compl. ¶ 50. He testified that before he received Koch's offer of employment, he was actively interviewing with other firms. Linker Aff. ¶¶ 28–32; Linker Dep. at 175–77; *see id.* at 86 (listing firms such as Greenwich Capital Markets, Prudential Securities, First Boston, Morgan Stanley, Paine Webber, and Smith Barney); *id.* at 89 (discussing his use of headhunters); *id.* at 82–100, 178–81 (describing his contact with other firms). Although he did not receive any formal job offers, he explained that at his level of seniority it was common practice for firms not to extend a formal offer until an applicant requested one. *Id.* at 82–83. Moreover, Ronald DiPasquale, a Managing Director at Koch Investments, testified that while Koch was recruiting plaintiff, he assumed that plaintiff "could get a job on the street real easy. . . ." DiPasquale Dep. at 158.

Nevertheless, defendants rely on *Croslan v. Housing Authority for New Britain,* 974 F.Supp. 161, 168 (D.Conn.1997) (Dorsey, C.J.); for the proposition that forbearance from seeking other job opportunities or employment is not enough to show detrimental reliance. Unlike *Croslan,* this case does not involve a dispute about plaintiff's continued employment with a public agency, and the employer's promises to the plaintiff to that degree.[2] Rather, the

---

2. Additionally, the court in *Croslan* found that the plaintiff did not produce sufficient evidence to show that she refrained from searching for other job opportunities in reliance on

issue is whether the plaintiff was injured when he did not receive a bonus because he turned down other job opportunities to accept Koch's offer of employment and alleged promise to pay a bonus. Plaintiff bears the burden of establishing the existence of the elements essential to a claim for promissory estoppel, and according to the Connecticut Supreme Court, "whether that burden has been satisfied in a particular case is an issue of fact." *Middlesex Mut. Assurance Co. v. Walsh*, 218 Conn. 681, 699, 590 A.2d 957, 967 (1991). Thus, we deny defendants' summary judgment motion on Count Two.

## III. NEGLIGENT MISREPRESENTATION

■ Plaintiff relies on the facts forming the basis of his breach of contract and promissory estoppel claims to assert a cause of action for negligent misrepresentation. Koch first argues that the representations alleged were not false. Plaintiff asserted that Koch made at least two representations to him—that he would be paid a bonus based on multiples of his base salary and that Koch Industries would give Koch Industries $100 million, for a minimum of three years, which could be leveraged up to $1 billion. We find that defendants have not sustained their burden of showing the absence of a genuine issue of material fact as to whether the alleged representations contained false information.

Koch next contends that plaintiff did not justifiably rely on those representations, and that the representations were not the proximate cause of his alleged damages. These arguments raise similar issues as those discussed above in the section on promissory estoppel. Accordingly, a jury will have to determine whether the executives at Koch involved in the decision to hire plaintiff made such representations, and knew at the time they were made that they were false. The jury must then consider whether plaintiff justifiably relied on her employer's promise of continued employ-

the misrepresentations to his detriment, thereby causing his injuries. Consequently, we deny summary judgment on Count Three.

## IV. QUANTUM MERUIT

■ In his *quantum meruit* claim in Count Four, plaintiff asserts that he is seeking the reasonable value of the services he actually rendered to defendants. *See Monarch Accounting Supplies, Inc. v. Prezioso*, 170 Conn. 659, 666–67, 368 A.2d 6, 10 (1976) (stating that the damages in an unjust enrichment claim "should be the benefit received" by the defendant). In contrast, defendants argue that they were not unjustly enriched by his services, because the facts demonstrate that Koch Investments' trading operations were not profitable.

The issue of whether defendants were benefitted is a question of fact for the jury. *Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 283, 649 A.2d 518, 522 (1994). Among other things, the jury will have to consider whether the benefit should be determined according to (1) revenues or profits; (2) trading profits or plaintiff's contribution to the net present value of the firm; (3) profits of Koch Investments or of Koch Investments and Koch Industries; and (4) profits on trading mortgage-backed securities or trading in the customer account of Amalgamated. The answers to these questions depends on what the jury concludes about the conduct of the parties and the circumstances surrounding Koch's decision to close its Greenwich office, which are all factual determinations. Thus, we deny summary judgment to defendants on Count Four.

## V. CONNECTICUT'S WAGE LAW

■ Count Five avers a violation of the Connecticut Wage Law, C.G.S.A. § 31–71a *et seq.*, based on defendants' failure to pay plaintiff bonus compensation. Defendants ment. 974 F.Supp. at 168 n. 3.

contend that this claim must fail for two reasons—first, because plaintiff cannot show that defendants contractually agreed to pay plaintiff any bonus compensation; and, second, because plaintiff admits that defendants had no obligation to pay plaintiff a bonus if the trading operation was not profitable. As we discussed above in the sections on plaintiff's breach of contract and unjust enrichment claims, the resolution of these issues involves questions of fact. Thus, we deny summary judgment on Count Five.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment (doc. # 59) is DENIED. Given the age of this case, this Court directs the parties to prepare this case for trial this fall.

SO ORDERED.