

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-1-2005

# Ankerstjerne v. Schlumberger Ltd

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2379

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

## Recommended Citation

"Ankerstjerne v. Schlumberger Ltd" (2005). *2005 Decisions.* Paper 575.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/575

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-2379

———

WILLIAM D. ANKERSTJERNE

Appellant

v.

SCHLUMBERGER, LTD.; SCHLUMBERGER OMNES, INC.

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 03-cv-03607)
District Judge: Honorable Mary A. McLaughlin

———

Submitted Under Third Circuit L.A.R. 34.1(a)
April 21, 2005

Before: ROTH, FUENTES, and STAPLETON, <u>Circuit Judges</u>.

(Filed:  September 1, 2005)

———

OPINION OF THE COURT

———

FUENTES, Circuit Judge.

Plaintiff-Appellant William D. Ankerstjerne appeals from the District Court's grant of summary judgment in favor of the Defendants Schlumberger Ltd. and Schlumberger Omnes, Inc. (collectively, "Schlumberger"). Ankerstjerne brought claims of breach of contract, violation of Pennsylvania's Wage Payment and Collection Act, promissory estoppel, and unjust enrichment against Schlumberger on account of Schlumberger's failure to pay him bonuses on contracts he helped the company obtain. In particular, Ankerstjerne contends that he is owed bonuses in an amount greater than $2 million under the 2001 "SLB Corporate Incentive Plan for ARC Transitioned Employees" ("Transition Plan") for work he performed on the Dallas County, Lee County, and other projects in 2002. Moreover, Ankerstjerne contends that during 2002, at least one Schlumberger manager made representations to him that he would be compensated under the Transition Plan.

We affirm substantially for the reasons expressed in the thorough and persuasive opinion of the District Court. We add the following to underscore our own agreement with that decision.[1]

---

[1]"Our standard of review applicable to an order granting summary judgment is plenary." Morton Int'l, Inc. v. A.E. Staley Mfg. Co., 343 F.3d 669, 679 (3d Cir. 2003) (citing Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002)). "We apply the same test employed by the District Court under Federal Rule of Civil Procedure 56(c)." Morton Int'l, 343 F.3d at 679 (citation omitted). "Accordingly, the District Court's grant of summary judgment in favor of [Schlumberger] was proper only if it appears that 'there is no genuine issue as to any material fact and that [Schlumberger] is entitled to a judgment as a matter of law.'" Id. at

First, we reject Ankerstjerne's contention that the District Court erred in granting summary judgment to the Defendants on his breach of contract claim. We must begin our analysis with the language of the Transition Plan, whose terms, if they are unambiguous, are to be construed by the court. Ram Constr. Co., Inc. v. Am. States Ins. Co., 749 F.2d 1049, 1052 (3d Cir. 1984) ("When the agreement is in writing, ambiguous terms are interpreted by the jury, unambiguous ones by the court."). Determining whether the terms of a contract are ambiguous is a question of law. See St. Paul Fire & Marine Ins. Co. v. Lewis, 935 F.2d 1428, 1431 (3d Cir. 1991). Here, the language of the Transition Plan is unambiguous as to its duration: it clearly states that the "Plan Period" was from "Jan. 01, 2001 thru Dec. 31, 2001"; it details specific performance objectives that are tied to particular time periods in 2001; and it included a capitalized reference to "THE YEAR 2001," above Plaintiff's signature line. Accordingly, by the plain language of the agreement, the Transition Plan, under which Ankerstjerne seeks compensation, applied only to work performed in 2001, not 2002. See Wheeler v. Graco Trucking Corp., 985 F.2d 108, 114 (3d Cir. 1993) (holding that summary judgment was appropriate where plaintiff's claim was foreclosed by the plain language of the contract); DiJoseph v. Metro. Life Ins. Co., No. 94-3445, 1995 WL 89020, at *4 (E.D. Pa. Mar. 1, 1995) (granting summary judgment on breach of contract claim where

679-80 (citing Fed. R. Civ. P. 56(c)). "In evaluating the evidence, we take the facts in the light most favorable to the nonmoving party, [Ankerstjerne], and draw all reasonable inferences in [his] favor." Id. at 680 (citation and quotation omitted). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

claim of bonuses foreclosed by plain language of contract).

Despite the plain language of the Transition Plan, Ankerstjerne relies on extrinsic evidence to prove the existence of an implied-in-fact contract between Schlumberger and himself from approximately January 2002 to October 2002 under the terms of the 2001 Transition Plan. For instance, Ankerstjerne relies on the fact that no replacement bonus plan for 2002 was given to him until at least October 2002, and that accordingly the Transition Plan "rolled over" to cover the period between January and October 2002. In making this argument, Ankerstjerne appears to rely on the rule that "where a person is hired for a definite term at an agreed rate and continues in the employment after the term without any new agreement, the presumption is that the same rate is to be continued." Kirk v. The Jerrold Corp., 332 F. Supp. 247, 249 (E.D. Pa. 1971). However, as Kirk noted, this rule is only applicable where the term of employment is a fixed term, and the parties to the employment relationship have not, at the time of formation, provided for a payment contingency beyond the term fixed by the contract. Id. Here, as the District Court noted, Schlumberger and Ankerstjerne envisioned their employment relationship to be open-ended, extending well-beyond the termination of the Transition Plan. Accordingly, the fact that no new bonus compensation plan was provided to Ankerstjerne until October 2002 does not mean that an implied contract under the terms of the 2001 Transition Plan was created in the interim.[2]

---

[2]Ankerstjerne initially relied on Kirk in the District Court in support of his breach of contract claim. Now, on appeal, we note that it is Ankerstjerne who is seeking to distinguish Kirk, even though he relied on it before the District Court. In any event, we see no error in

-4-

Similarly, Ankerstjerne relies on alleged statements made by his supervisor, John Anderson, that the Transition Plan would cover work performed in 2002 until a new plan was put in place. In particular, the record indicates that Ankerstjerne stated in a deposition that: "I am telling you that Mr. Anderson told me that he <u>assumed</u> that until the [new] compensation plan was put into place, that the compensation plan that is in place stood." App. at 552 (emphasis added). We agree with the District Court that Anderson's "assumption" regarding the applicability of the Transition Plan to work performed in 2002 is too indefinite and vague to constitute sufficient evidence overcoming the express durational limits contained in the plain language of the contract.[3]

Second, we reject Ankerstjerne's argument that the District Court erred in granting summary judgment to Schlumberger on his promissory estoppel claim. Under Pennsylvania law, a court may enforce a "promise that is unsupported by consideration where (1) the

---

the District Court's reliance on <u>Kirk</u> as it expresses the rule that is to be applied in this case. Moreover, we are unpersuaded by the other cases that Ankerstjerne relies on, including <u>Borg-Warner Corp., Ingersoll Kalamazoo Div. v. Ostertag</u>, 118 N.W.2d 900 (Wis. 1963), as none of these cases involved the situation present here, where an employee was hired as part of an open-ended employment relationship but offered a transition bonus plan for a sub-period of that relationship.

[3]Ankerstjerne contends that the District Court ignored his alternative argument that Schlumberger could not retroactively apply the 2002 bonus plan to work performed prior to October 2002. This is simply not the case as the record indicates that the District Court considered and rejected Ankerstjerne's argument. <u>See</u> App. at 11 n. 8 (citing <u>Skodnick v. Rand McNally & Co.</u>, No. 87-0077, 1987 WL 28091 (E.D. Pa. Dec. 14, 1987)). In any event, Ankerstjerne's reliance on <u>Skodnick</u>, and similar cases, for the proposition that Schlumberger was prohibited from retroactively applying the 2002 bonus plan presumes that the 2001 Transition Plan was in effect from January to October 2002. As we have already discussed, the record simply does not support this presumption.

promisor makes a promise that he reasonably expects to induce action or forbearance by the promisee, (2) the promise does induce action or forbearance by the promisee, (3) and injustice can only be avoided by enforcing the promise." Carlson v. Arnot-Ogden Mem'l Hosp., 918 F.2d 411, 416 (3d Cir. 1990) (citing Cardmore v. Univ. of Pittsburgh, 384 A.2d 1228, 1233 (Pa. Super. Ct. 1978)). However, a broad and vague implied promise is insufficient to satisfy the first element. See C&K Petroleum Prods., Inc. v. Equibank, 839 F.2d 188, 192 (3d Cir. 1988). Here, the record indicates that Rusty Petree, a senior manager at Schlumberger, allegedly told Ankerstjerne that "it was ridiculous" that Ankerstjerne had not been compensated for the projects he had worked on, and that he (Petree) "would get it taken care of . . . per the terms of [Ankerstjerne's] compensation plan." However, this statement by Petree, as well as others he is alleged to have made, are simply too vague and indefinite to constitute a "promise" for purposes of promissory estoppel. As the District Court noted, the alleged statements by Petree do not specify "how much the plaintiff would be paid, by whom he would be paid, how payment was to be calculated, or when the plaintiff would be paid." App. at 15. For these reasons, Ankerstjerne's reliance on Linker v. Koch Investments, Inc., 62 F. Supp. 2d 611 (D. Conn. 1999), is misplaced, as the promise to pay bonuses in Linker was far more definite and adequately supported by evidence in the record, which is not the case here. See id. at 613-14 (noting that evidence included promises by the employer than "bonuses would be paid to the trading group based on 15-20% of trading profits earned from the trading operations" as well as an affidavit that the bonus scheme was

consistent with industry standards).

Even assuming, however, that the promise by Petree was definite enough, we note that Ankerstjerne has not pointed to evidence in the record establishing that he detrimentally relied on Petree's promise. To succeed on a promissory estoppel claim, the plaintiff must establish that he took action that "amounted to a substantial change of position." Kaufman v. Mellon Nat'l Bank and Trust Co., 366 F.2d 326, 332 (3d Cir. 1996). However, there is no record evidence indicating, for instance, that by working on the Lee County project in 2002, he had to forego working on some other project that could have yielded a larger bonus, or that he was in a position to refuse to work on the projects in question. Ankerstjerne only makes the conclusory assertion that he would not have worked on the Lee County project but for Petree's promise, see Appellant's Br. at 50, even though he himself stated that he was "assigned" to work on that project. See App. at 43. In these circumstances, we fail to see how Ankerstjerne detrimentally relied on Petree's promise.[4]

Finally, we find no error in the District Court's grant of summary judgment to Schlumberger on the unjust enrichment claim. A claim of unjust enrichment requires the plaintiff to "show that the party against whom recovery is sought either wrongfully secured

---

[4]Ankerstjerne's reliance on Bootel v. Verizon Directories Corp., No. 03-1997, 2004 WL 1535798 (E.D. Pa. June 25, 2004), is misplaced, as there was a dispute in Bootel as to whether the plaintiff's solicitation efforts were consistent with her job duties and her bonus scheme. Id. at 4-6. In contrast, here there is no dispute that Ankerstjerne's efforts on the Dallas and Lee County projects were encompassed within his job duties. See Appellant's Br. at 10-11.

or passively received a benefit that would be unconscionable for the party to retain without compensating the provider." Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987) (citation omitted). Ankerstjerne reiterates his argument that the 2001 Transition Plan covered the work he performed from January to October 2002, and that it is "unconscionable" that Schlumberger promised to pay him per the Transition Plan, induced him to work on the projects in question as a result, and then failed to compensate him as promised. See Appellant's Br. at 54. However, we already have rejected Ankerstjerne's contention that the Transition Plan "rolled-over" into 2002, as the plain language of the contract states that it is limited to work performed in 2001. Moreover, we note that Ankerstjerne was still paid his base salary of $97,900, and a bonus of $6,853, for the work that he performed in 2002, compensation which Ankerstjerne does not contend was inconsistent with the 2002 bonus plan. As the District Court stated: "The plaintiff has not shown that he provided the defendants with anything more than the work he was hired to do." App. at 17; see also Herbst v. Gen. Accident Ins. Co., No. 97-8085, 1999 WL 820194, at *9 (E.D. Pa. Sept. 30, 1999) (denying claim for unjust enrichment where "plaintiff has not shown that he did anything more than work to the best of his abilities for defendant as he was engaged to do"). Accordingly, Schlumberger is entitled to summary judgment on the unjust enrichment claim.

We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary. Accordingly, the judgment of the District Court will be

affirmed.